Osborne, J.
Defendant was the proprietor of a coal yard on Gowanus canal, and boats loaded with coal for defendant wer& brought up the canal to the dock at his yard, to be unloaded. In unloading, the coal was shoveled into large tubs lowered into the hold of the boat; there was a small engine on the dock, the rope used for hoisting the tubs wound around a drum on the engine and went up through a block on a derrick, and then down to the tub, to which it was attached by a hook. When a tub was filled, a signal was given to the engineer on the dock, who started the engine, and the tub was hoisted to a platform elevated above the dock. The coal was there dumped into cars and carried away, and the tub was then again lowered to be filled; this hoisting and lowering was regulated by levers or handles on the engine.
On October 6, 1891, plaintiff was employed by the defendant, together with one Tynan, to unload a canal boat, and they descended into the hold to shovel the coal into tubs, two of which were used, and the practice was to fill one while the other was being hoisted, emptied and relowered. Plaintiff had filled his tub, and it was in the act of being hoisted to the elevated platform when it suddenly fell, striking the plaintiff and injuring him severely, and plaintiff in this action seeks to recover damages for the injuries so received.
It appeared from the testimony of the witness Tynan, called on behalf of the plaintiff, and who saw the tub fall and the incidents connected with its fall, that defendant had in his employ one Gustave Bohnsack, as engineer, whose business it was to manage-the engine in such a way as to raise and lower the tubs; defendant also had in his employ an old man named Coyle, as a stable-man. Tynan further testified that, at the time the tub in question fell, Coyle had hold of the handles or levers of the engine, and was trying to hoist, and that, Bohnsack, the engineer, stood right behind him “ partly in a position so as by touching him by the arms to help him to hoist; * * *" he was instructing him to do this ‘ up and up ’; they used to let it go up, and when he said ‘ up, up ’ he raised it up gradually, you know, until it got so high, over our heads like; then he says to him let go,’ that was to let it go up, and ho *328 turned around to let it come down; when he said let it go,’ that is, to go up, the old man turned it the other way, raised the other one; that let it down ; that is how it came right down ; at that time the old man (Coyle) had hold of the engine. * * *
“ Q. By the Court: How long had this old man been running the engine ? A. That was the first of my ever seeing him take hold of it, the time he got hurt.”
It thus appeared that the plaintiff was seriously injured while in defendant’s employ by the falling of the tub, and that the tub fell through the blunder of a stableman while he was being instructed by defendant’s engineer in the method of operating the engine in obedience to defendant’s orders. We are of the opinion that the case thus presented was sufficient to call upon the defendant to rebut, if he could, the legitimate inference of negligence which a jury would be justified in drawing from the evidence adduced. Accordingly, the motion to dismiss was properly denied, and the exception to such denial was not well taken.
It appeared from the defendant’s testimony that about two months prior to the accident he had told his engineer, Bohnsack, that it would be necessary, and that he wanted him to break in one or two of the other men so that they could run the engine when necessary, or when Bohnsack was absent, and defendant mentioned his brother and Coyle as the men that he wanted to have broken in. Bohnsack testified that, in accordance with the aforesaid directions which defendant had given him, he had called in Coyle just before the accident for the purpose of instructing him how to operate the engine, and his account of how the tub came to fall was as follows : “ As soon as the boy what was holding guy sung out for to go ahead, and we went ahead, and I was standing right behind Coyle and had my hands on his hands, and I thought that the top [tub (?)] was clear; I said a little more,’ and he must have just raised his right hand up a little, and, of course, down the tub came; I had my hand on his, stood behind him; T was in the act of instructing him ; I did not have my hand over his only so to say that I could guide him.” On cross-examination, he further testified: “ I had my hands on his hands not on his hands, but right behind him, the way that I stood behind him ; he must have made a wrong move in some way which let that down.”
We think that, on the whole evidence, it was the duty of the learned trial judge to submit the issue of the negligence of the defendant to the jury upon proper instructions. The learned counsel for the appellant has strenuously argued that the evidence, at .most, only justified a finding of negligence on the part of a fellow-servant of the plaintiff, for which appellant could not be held liable. We do not think that this contention can be maintained. It is well settled that the immunity of the master from the consequences of the negligence of a fellow-servant only applies when the master has, in the first instance, performed all his duty to his servants. One, and a very material duty of the master, is to employ skilful and competent fellow-servants. It cannot be contended that the stable-man, Coyle, was a skilful and com *329 petont engineer, for it plainly appeared that the accident which caused plaintiff’s injuries was due to his ignorance of the proper manner of working the engine. It certainly cannot be claimed that among the risks of plaintiff’s employment was a liability to injury arising in the course of instructing a stable-man how to run an engine. It is to be borne in mind that the evidence shows that the appellant himself directed his engineer to “ break in ” Coyle, so that he could run the engine.
The learned counsel for the appellant further contends that the act of the engineer in attempting to teach Coyle how to operate the engine at the time that he did was an independent act on his part, and that if the engineer was negligent in selecting an improper time to instruct Coyle, it was the negligent act of the engineer, for the consequences of which defendant cannot be held responsible. Conceding, for the sake of the argument, that this contention is a correct one, a complete answer to it is that the jury have found the fact to be otherwise. In- the course of his charge, the learned trial judge instructed the jury as follows: “ In order to find that Mr. Davids was negligent, you must decide that the engineer was careless in what he did, and that the engineer was, at the time, acting for Mr. Davids, because, if the engineer was acting on his own account, Davids would not be responsible for his acts. * * * If he (the engineer) was not acting for the' master, or under his direction, then Davids, tli" master, would not be responsible for the act of the enginev ¡ Under these instructions, the jury found for the plaintiff. j '
Certain exceptions were taken by the learned counsel for tl ' defendant to the refusal of the learned trial judge to charge as requested, but none of them seem to us to call for any special attention. The law applicable to the case, as laid down by the learned trial judge to the jury, covered the whole case, and was quite as liberal, we think, to the appellant as the case would warrant.
We are of the opinion that the judgment and the order denying motion for a new trial should be affirmed, with costs.
Van Wyck, J., concurs.